**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Timothy Murphy, Vanessa Murphy, Donald Murphy, Brendan Murphy, Ginevieve Murphy, Margaret Murphy, Molly Murphy, and James O'Connell,<br><br>Plaintiffs,<br><br>v.<br><br>Jeannine C. Lofgren, Officer Christopher Lofgren, Officer Brian Patino Sanchez, Officer Kenneth Molesky, Officer Adam Altenbach, Officer Gary Wendt, and the City of Chicago,<br><br>Defendants. | NO. 1:25-CV-12380<br><br>Judge Edmond E. Chang |

**MEMORANDUM OPINION AND ORDER**

In November 2024, three cars got into an accident in the south-side of Chicago: the Murphy family was in one car, James O'Connell was in the second, and the third was driven by Jeannine Lofgren. R. 1, Compl. ¶¶ 7–10.[1] Unsatisfied by how Chicago police officers responded to the accident, the Murphys and O'Connell have filed this lawsuit against Jeannine Lofgren—who is the spouse of a Chicago police officer—as well as Chicago police officers Christopher Lofgren, Brian Patino Sanchez, Kenneth

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

Molesky, Adam Altenbach, and Gary Wendt, plus the City of Chicago, alleging violations of constitutional rights and state law rights.[2] Compl. ¶¶ 19–66.

The officers and the City have filed partial motions to dismiss, specifically targeting the claims for denial of judicial access, § 1983 and state law conspiracy, *Monell* liability, and state law indemnification. *See* R. 24, Officers' Mot.; R. 26, City's Mot. For the reasons discussed in the Opinion, the motions are granted as to the federal law claims. But the dismissal of the claims is without prejudice for now, and the Plaintiffs may file an amended complaint by October 13, 2026, if they believe that they can fix the defects in the original complaint. For now, the Court holds off on evaluating any state law claims; if no federal law claims survive, then the Court will relinquish supplemental jurisdiction over the state law claims.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

On November 16, 2024, Timothy Murphy was driving westbound on 115th Street with his father, wife, and children in the far south-side of Chicago. Compl. ¶ 7. At around the same time, James O'Connell was driving eastbound on the same street. *Id.* ¶ 8. O'Connell put on his signal to make a left turn onto a north-south street

[2]This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(a).

(Hamlin Avenue). *Id.* ¶¶ 8, 10. But as O'Connell was preparing to make the turn, Jeannine Lofgren, who also was driving eastbound behind O'Connell, struck the rear of his car.[3] *Id.* ¶¶ 9–10. Jeannine Lofgren then struck Murphy's vehicle head-on at the intersection. *Id.* ¶ 10.

After the accident, Jeannine Lofgren got out of her car and, allegedly in an impaired state, yelled that her husband was a Chicago police officer. Compl. ¶ 11. Chicago police officers Brian Patino Sanchez, Kenneth Molesky, Adam Altenbach, and Gary Wendt responded to the scene of the accident. *Id.* ¶ 12. Officer Christopher Lofgren also arrived on the scene and explained to the other police officers that Jeannine Lofgren was his wife, and that she had been driving his car at the time of the accident. *See id.* ¶ 13.

Christopher Lofgren and the other police officers allegedly agreed not to require Jeannine Lofgren to undergo any field sobriety tests. Compl. ¶ 14. The officers also did not issue any traffic citations to Jeannine Lofgren. *See id.* Worse, according to the Plaintiffs, Christopher Lofgren and the other officers agreed to falsify the crash report by claiming that no statements were taken and listing the cause of the accident as "undetermined." *Id.* ¶ 15. The crash report also allegedly included an intentionally incorrect wrong spelling of Christopher Lofgren's name and (also intentionally) the wrong insurance policy number. *Id.* The Plaintiffs allege that the police officers failed to conduct a legitimate investigation of the accident, even though there were multiple

[3]This Opinion refers to Jeannine Lofgren and Christopher Lofgren by their full names to avoid confusion.

witnesses at the scene. *Id.* ¶ 16. The Plaintiffs assert that even though they wanted to pursue criminal charges against Lofgren, the police officers "conspired" with Christopher Lofgren and prevented them from doing so. *Id.* ¶ 17.

In this lawsuit, the Plaintiffs bring claims for negligence against Jeannine Lofgren, Compl. ¶¶ 19–23; negligent entrustment against Christopher Lofgren, *id.* ¶¶ 24–29; conspiracy under 42 U.S.C. § 1983 and Illinois state law against the Lofgrens and the police officers, *id.* ¶¶ 30–34; denial of judicial access under 42 U.S.C. § 1983 against the police officers and Christopher Lofgren, *id.* ¶¶ 35–38; *Monell* liability against the City, *id.* ¶¶ 39–59; and state law indemnification against the City, *id.* ¶¶ 60–62.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (cleaned up).[4] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v.*

[4]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*Sorema N.A.*, 534 U.S. 506, 514 (2002)). At the same time, the Supreme Court instructs that "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task." *Iqbal*, 556 U.S. at 679. The Seventh Circuit has drawn a context-dependent distinction between relatively straightforward employment discrimination claims versus more complex claims. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

**III. Analysis**

It makes sense to first address the viability of the First Amendment claim for denial of judicial access, because the § 1983 conspiracy and *Monell* claims rise and fall with the access claim. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) ("[T]he absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim."); *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008) (noting that "conspiracy is not an independent basis of liability in § 1983 actions"); *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th

Cir. 2010) ("[B]ecause there is no underlying constitutional violation, the City cannot be liable under *Monell*."). This is not one of those rare cases in which a *Monell* claim is viable without an underlying viable claim against individual government officers.

Here, the Plaintiffs allege that police officers Christopher Lofgren, Sanchez, Molesky, Altenbach, and Wendt denied the Plaintiffs their constitutional right to judicial access by allegedly conducting a sham investigation and falsifying the crash report through fabrication and omission of information to protect Jeannine Lofgren. Compl. ¶¶ 36–37. The Plaintiffs argue that the officers' actions prevented them from accessing critical information, which "deprive[d] [them] of the ability to properly investigate and prosecute their claims against" Jeannine Lofgren. Compl. ¶ 37.

It is true that the "First and Fourteenth Amendments protect the rights of individuals to seek legal redress for claims that have a reasonable basis in law and fact." *Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015); *see also Christopher v. Harbury*, 536 U.S. 403, 414 (2002) (holding "the loss of an opportunity to sue" or "the loss of an opportunity to seek some particular order of relief" may be official acts that form the basis for a denial-of-judicial-access claim). Stated very generally, "[i]nterference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under § 1983." *Rossi*, 790 F.3d at 734. For instance, "when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995).

But plaintiffs "do[] not have a constitutional right to have the police investigate [their] case at all, still less to do so to [their] level of satisfaction." *Rossi*, 790 F.3d at 735. The Seventh Circuit has set a high bar for alleging a viable claim for denial of judicial access. When evaluating a judicial-access claim, the key question is whether the officers' failure to investigate "so limited [the plaintiff's] ability to obtain legal redress to such degree that it constituted a denial of judicial access." *Rossi*, 790 F.3d at 735. In *Rossi*, the plaintiff was beaten and interrogated by several assailants, allegedly with the help of an off-duty Chicago police officer. *Id.* at 732. Eventually the plaintiff reported the name of the officer-assailant to a Chicago police detective. *Id.* at 733. But the detective did not act on this information—instead, he filed a false report with the wrong name and asserted that he could not find on the police roster the name of the officer-assailant. *Id.* In the resulting lawsuit, the plaintiff claimed that the detective "violated his right to judicial access by failing to investigate the crime scene and purposefully concealing [the police officer's] identity." *Id.* at 734.

The Seventh Circuit held that the plaintiff's court-access right had not been violated "because he knew all of the relevant facts of his case and was free to pursue legal redress at all times." *Rossi*, 790 F.3d at 736. The court reasoned that "[w]hether a cover-up (or a clear failure to investigate) occurred is merely one, albeit important, factor in determining whether a denial of judicial access occurred; the plaintiff must also show that the police's actions *harmed* his ability to obtain appropriate relief." *Id.* (emphasis added). This inquiry depends on "factors such as whether the plaintiff was able to discover the facts on his own, whether a proper investigation was later

conducted, and whether the true facts are disclosed prior to the expiration of the limitations period." *Id.*

Likewise, in *Thompson v. Boggs*, police used excessive force on the plaintiff, and then falsely omitted that fact from the police report of the incident. 33 F.3d 847, 852–53 (7th Cir. 1994). The Seventh Circuit held that there was no court-access violation because "the facts known to [the plaintiff] concerning the arrest were sufficient to enable him to promptly file the instant lawsuit[,]" *id.* at 852, and thus the plaintiff could bring an excessive-force civil claim regardless of what was documented in the police report. Similarly in *Vasquez v. Hernandez*, police covered up the accidental shooting of the plaintiff, which delayed the identification of the responsible officers until six months later (when an independent task force took over the investigation). 60 F.3d at 326–27, 329. The Seventh Circuit held that there was no court-access violation because the plaintiffs were eventually able to uncover the relevant facts of the case. *Id.* at 329.

Like in *Rossi*, *Thompson*, and *Vasquez*, here the Plaintiffs have not adequately pleaded how the police officers' alleged actions so undermined the Plaintiffs' ability to pursue relief that their court-access right has been violated. The complaint alleges that the police officers covered up Jeannine Lofgren's misconduct "by conducting a sham investigation" and falsifying and omitting information in the crash report, in an "attempt to deprive [the Plaintiffs] of the ability to properly investigate and prosecute their claims against [her]." Compl. ¶¶ 36–37. But the key problem is that the Plaintiffs had *personal* knowledge of the relevant facts of the accident, that is, that

Jeannine Lofgren caused the accident and acted impaired when she was driving. Indeed, the Plaintiffs themselves were present when the accident happened, so they could fully present their side of the story.

The Plaintiffs argue that *Rossi* is distinguishable because the plaintiff there was not "reliant on [the police detective] to discover facts necessary to fill in gaps in his knowledge," the police detective "did not conceal any facts about the incident that were not already known to [the plaintiff]," police conducted a proper investigation "within months of the crime and before the expiration of the limitations period," and "[the plaintiff] was able to use the findings of these investigations in his civil suit against his assailants." 790 F.3d at 736; *see* R. 31, Pl.'s Resp. to Officers at 4. To the Plaintiffs' way of thinking, the lack of a proper investigation prevented them from learning the identity of eyewitnesses or obtaining evidence of Jeannine Lofgren's impairment. Pl.'s Resp. to Officers at 5–6. If there were such a thing as a general right to adequate investigation, the Plaintiffs might have a point, because no doubt a proper investigation would have strengthened the negligence claim against Jeannine.

But more is required to state a viable claim for denial of judicial access under *Rossi*. In *Rossi*, the Seventh Circuit acknowledged that the plaintiff's case "would likely have been stronger had [the police detective] conducted a prompt search" of the room where the beating and interrogation took place. 790 F.3d at 736. But the court held that "this fact, standing alone, is not sufficient to support the conclusion that [the detective]'s actions denied [the plaintiff] an opportunity to achieve sufficient redress through a civil action." *Id.* The same is true here. The Plaintiffs here were free

to immediately file a negligence claim against Jeannine Lofgren and start deploying the tools of discovery, including serving discovery requests on Jeannine (to obtain evidence of what she had been doing before the accident and the source of the impairment) and issuing subpoenas to non-parties (to find other eyewitnesses to her negligence and impairment). Again, the key question is whether the Plaintiffs' "ability to obtain legal redress" was hampered "to such [a] degree that it constituted a denial of judicial access," not whether their case "would have been better," *Rossi*, 790 F.3d at 735. Having said all this, the dismissal is without prejudice for now, and the Plaintiffs may try to replead the court-access claim. The Court notes that *Rossi* was decided on summary judgment, so it is possible that the Plaintiffs can plead enough to get past the pleading stage. In particular, it is possible that the Plaintiffs can provide more allegations on the conspiracy to forgo a field-sobriety test of Jeannine Lofgren. The quality and strength of the evidence that would be generated from a breath or blood test (or even a physical or mental test, like walking in a straight line or counting backwards) might not be readily replaceable. But more facts (just allegations, not evidence) are needed to understand, for example, what tests are standard (if any) after car accidents in which there is alleged impairment, whether responding officers typically have access to breath tests, and so on. The Plaintiffs also should consider that qualified immunity remains a potential obstacle even at the pleading stage.

Because the Plaintiffs have failed (for now) to allege a court-access violation against officers Christopher Lofgren, Sanchez, Molesky, Altenbach, and Wendt, the § 1983 claim is dismissed against them. And as noted earlier, the § 1983 conspiracy

and *Monell* liability claims are also dismissed because there is no viable underlying constitutional violation. Because the Court would decline to exercise supplemental jurisdiction over the state law claims if no federal law claim survives, the Court refrains from evaluating any of the state law claims for now. *See* 28 U.S.C. § 1367(c)(3) (allowing a district court to "decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state law claims rather than resolving them on the merits.").

## IV. Conclusion

For the reasons discussed above, the motions to dismiss the federal law claims, R. 24, R. 26, are granted. The court-access claim (Count 4), the § 1983 conspiracy claim (Count 3), and the *Monell* claim are dismissed, but without prejudice. If Plaintiffs wish to try and fix the defects identified in this Opinion, then they must file an

amended complaint by October 16, 2026. If the Plaintiffs do not file an amended complaint by the deadline, then the dismissals will convert to a dismissal with prejudice and the Court will relinquish supplemental jurisdiction over the state law claims.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 24, 2026